UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

KATHERINE CZACHOROWSKI,

      Plaintiff,

      v.

STATE OF NEW YORK et al.,

      Defendants.

22-CV-878-LJV
DECISION & ORDER

---

On November 15, 2022, the pro se plaintiff, Katherine Czachorowski, commenced this action against the State of New York, the New York State Insurance Fund ("NYSIF"), Eric Madoff, Joseph Mullen, Gaurav Vasisht, and John and Jane Doe. Docket Item 1.  On May 1, 2023, after the defendants had moved to dismiss, Docket Item 11, Czachorowski filed an amended complaint, adding Mary Beth Woods and Patricia Carroll as defendants and removing Eric Madoff.  Docket Item 13.

On August 31, 2023, the defendants moved to dismiss the amended complaint. Docket Item 19.  Several weeks later, Czachorowski opposed the motion to dismiss and moved to amend the complaint a second time.  Docket Items 23-25.  The Court granted the motion to amend and accepted Czachorowski's second amended complaint as the operative pleading.  *See* Docket Item 27; *see also* Docket Item 25-1 (proposed second amended complaint).  The State of New York and NYSIF, along with Carroll, Woods, Vasisht, and Mullen (the "individual defendants"), then filed the motion at bar to dismiss

the second amended complaint.  Docket Item 29.  After Czachorowski opposed the motion, Docket Item 31, the defendants replied, Docket Item 32.[1]

For the reasons that follow, the Court grants in part and denies in part the motion to dismiss.

## BACKGROUND[2]

NYSIF "is a fund within the New York State Department of Labor established [under] Article 6 of the New York Workers' Compensation Law."  Docket Item 25-1 ¶ 18. Czachorowski served a "35-year career" as a "Claim Service Representative" with NYSIF.  *Id.* ¶¶ 49-50.  As a NYSIF employee, Czachorowski "is a bargaining unit member of the New York State Public Employees Federation, AFL-CIO[,] . . . a labor organization which is . . . the duly authorized collective bargaining representative of the professional, scientific, and technical employees employed by" New York State.  *Id.* ¶ 15.  Czachorowski served as a "steward" of the New York State Public Employees Federation, and was a "Council Leader[,] . . . member of its Agency Level Statewide Labor-Management Committee[,] and a member of the . . . Executive Board."  *Id.* ¶ 17.

---

[1] Czachorowski also moved to expedite the Court's decision on the motion to dismiss and to refer the case to a magistrate judge.  Docket Item 40.  The motion to expedite is denied as moot.  By separate order, the Court will refer the case to a magistrate judge to proceed with discovery.

[2] The Court draws these facts from Czachorowski's second amended complaint, Docket Item 25-1.  On a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), "a district court may consider evidence outside the pleadings."  *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010).  But on a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff.  *See Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).

Czachorowski had an "unblemished" record with NYSIF, "always received positive satisfactory performance evaluations[,] and ha[d] never been disciplined." *Id.* ¶ 50.

Czachorowski is a member of the "Marcionite Christian Church" and "regularly practices Marcionite Christianity in her everyday life." *Id.* ¶ 42.  The Marcionite Christian Church "forbid[s] its members from undergoing medical procedures commonly used in COVID-19 testing, including . . . nasal and oral swabs and other procedures which result in the collection of . . . DNA and other genetic material," and it "forbid[s] its members worldwide from receiving the RNA/DNA vaccines." *Id.* ¶¶ 43-44.

In March 2020, at the beginning of the COVID-19 pandemic, New York State implemented a "telecommuting agreement," which allowed Czachorowski and "virtually all other [NYSIF] employees" to work from home. *Id.* ¶ 51.  That permitted Czachorowski to work "without [COVID-19] vaccination or testing." *Id.*  At that time, being present in office was "not an essential function" of Czachorowski's job. *Id.* ¶ 24. In fact, after "February 1, 2019, [Czachorowski] d[id] not meet in person with claimants, their representatives, medical providers[,] or . . . employers" and communicated solely via "mail, fax, email[,] or phone." *Id.*

Throughout the COVID-19 pandemic, both NYSIF and the New York State Governor's Office of Employee Relations issued several telework policies and directives that provided telework and return-to-work requirements for state employees. *See id.* ¶¶ 53-60.  In June 2021, NYSIF announced that the next month, it would "begin a phased . . . return to work, requiring that all staff return to the office at least one day per week." *Id.* ¶ 53.  In August 2021, NYSIF "finalized a pilot telecommuting plan," and in

September, it required employees to "report to the office at least two days per week." *Id.* ¶ 55.

On September 5, 2021, NYSIF announced that a "vaccination or weekly testing requirement [was] scheduled to take effect on October 12, 2021," *id.* ¶ 56, and on September 7, 2021, "NYSIF implemented a pilot Telecommuting Program where employees with an approved telecommuting plan could work from home up to 4 days per pay period," *id.* ¶ 57.  That program "remained in place until . . . NYSIF entered into a Telecommuting Agreement with" the New York State Public Employees Federation in March 2022.  *Id.* ¶ 60.  In the meantime, on September 29, 2021, NYSIF updated its telecommuting policy and required staff to "report to the office at least three days per week."  *Id.* ¶ 58.  Beginning November 1, 2021, staff were "expected to return to the office full-time, except [for] those with approved reasonable accommodations or an approved NYSIF telecommuting application."  *Id.*

Because "[b]eing vaccinated or tested for COVID-19 contradicts [Czachorowski]'s sincerely held religious beliefs," *id.* ¶ 44, on September 30, 2021, she "completed and submitted . . . the form 'NYSIF Application to Request Reasonable Accommodation of Religious Observance or Practices,'" *id.* ¶ 63.  NYSIF employees "who had pending requests for reasonable accommodation" were asked "to not report to the office" and had to "charge their accruals rather than telecommute."  *Id.* ¶ 123.  Czachorowski was "a vocal critic" of this policy and of New York's "processing of requests for reasonable accommodation."  *Id.* ¶¶ 127-28.

On October 13, 2021, Czachorowski attended an "interactive process meeting" with NYSIF's "R[easonable] A[ccomodation] Designee" regarding her request for

reasonable accommodations.  *Id.* ¶ 68.  The next day, NYSIF "requested additional information" regarding Czachorowski's request, namely "the contact information of [her] church's outreach director so that [NYSIF might] obtain clarification" regarding the church's stance on the COVID-19 vaccine and testing.  *Id.* ¶ 69.  That same day, Czachorowski's supervisor, Linda Matz, provided NYSIF with feedback on Czachorowski's reasonable accommodation request.  *Id.* ¶ 70; *see id.* at 48-50 (Exhibit E).[3]  More specifically, Matz said that she had "no concerns" about Czachorowski's request for accommodations and felt "confident" that approving the request would "have a positive impact on both [her] unit and th[e] department."  *Id.* at 48-49.  Nevertheless, on October 15, NYSIF "denied [Czachorowski's] request for a reasonable accommodation."  *Id.* ¶ 71.

Three days later, Czachorowski "provided [NYSIF] a written religious attestation from her church" to further support her request.  *Id.* ¶ 72.  But on October 26, NYSIF issued a second denial.  *Id.* ¶ 73.  In denying the request, NYSIF's Reasonable Accommodation Designee explained that Czachorowski's refusal to "be vaccinated or get tested . . . increase[s] safety hazards, [and] poses a direct threat" to Czachorowski and her fellow employees.  *Id.* at 52-53 (Exhibit F).  The second denial added that a reasonable accommodation was not necessary because New York provides non-invasive testing and the Marcionite Christian Church leaves the decision of whether to agree to COVID-19 tests "that do not involve invasive DNA extraction such as temperature checks . . . or a simple (non-swab) spit test" to the individual's "sole discretion."  *Id.* at 57 (Exhibit H).  Czachorowski says that both denials were "so bereft

---

[3] Page numbers in docket citations refer to ECF pagination.

of detail," however, that she could not "understand[] why her request . . . was denied, or . . . seek[] an alternative accommodation." *Id.* ¶ 74. She notes that the denials did not state that approving her request "would impose an undue hardship" on NYSIF, nor did they say that NYSIF found her religious "beliefs to be insincere." *Id.* ¶¶ 75-76.

On November 15, 2021, Czachorowski again asked that her request be reconsidered. *Id.* ¶ 77. That "request for reconsideration was summarily denied" the next day. *Id.* ¶ 78. Czachorowski then filed an "'Employment Discrimination Complaint Form' with the New York State Division of Human Rights" making a "failure to accommodate claim," and she also filed a complaint with the EEOC. *Id.* ¶134.

On November 29, 2021, Czachorowski met with NYSIF "representatives" who told her she must "comply with the vaccination and testing policy" by December 6, 2021, or "face potential disciplinary action." *Id.* ¶ 135. On December 14, Czachorowski received a "written directive" stating the same. *Id.* The parties then engaged in an "interrogation" where Czachorowski "acknowledged her awareness of the [COVID-19] testing policy and her lack of compliance" for religious reasons. *Id.* ¶ 139.

On December 23, 2021, Czachorowski was "suspended . . . without pay." *Id.* ¶ 140. And on December 27, NYSIF "issued a Notice of Discipline . . . with a proposed penalty of termination from employment." *Id.* ¶ 141. While still on unpaid suspension, Czachorowski retired on February 16, 2022. *Id.* ¶ 147.

On April 6, 2022, the New York State Division of Human Rights ("DHR") issued a "Determination and Order After Investigation" finding "no probable cause to believe that [NYSIF] ha[d] engaged in . . . the unlawful discriminatory practice complained of." *Id.* at

73-74 (Exhibit K).  Czachorowski then sought EEOC review of the DHR order.  *Id.* ¶ 149.  On November 15, 2022, Czachorowski filed this action, Docket Item 1.

## LEGAL PRINCIPLES

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Id.* (citing *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996)).

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "When there are well-pleaded factual allegations [in the complaint], a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief," but that presumption is not afforded to "legal conclusions."  *Id.* at 678-79.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

"A court faced with a motion to dismiss [under] both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6)

motion is a decision on the merits and, therefore, an exercise of jurisdiction." *Magee v. Nassau Cnty. Med. Ctr.*, 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998); *see also Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) (noting that a motion to dismiss for failure to state a claim may be decided only after finding subject matter jurisdiction).

## DISCUSSION

The defendants move to dismiss the complaint on multiple grounds. In particular, the defendants ask the Court to "dismiss all . . . claims except [Czachorowski]'s Title VII religious discrimination and disparate treatment claims against NYSIF." Docket Item 29-1 at 10. Because the motion to dismiss the New York State Human Rights Law ("NYSHRL") claim based on the election of remedies bar is jurisdictional, the Court addresses that state law claim first. *See Higgins v. NYP Holdings, Inc.*, 836 F. Supp. 2d 182, 187 (S.D.N.Y. 2011) (explaining that "[t]he election of remedies bar is jurisdictional, such that claims dismissed pursuant to it must be dismissed under [Rule] 12(b)(1) rather than 12(b)(6)" (citing *Moodie v. Federal Reserve Bank,* 58 F.3d 879, 882 (2d Cir.1995))).

## I.    STATE LAW CLAIM UNDER NYSHRL

Under the NYSHRL, "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction . . . unless such person had filed a complaint hereunder or with any local commission on human rights." N.Y. Exec. Law § 297(9). Accordingly, a plaintiff can choose between litigating her NYSHRL claim in court or administratively, and NYSHRL

claims, "once brought before the [DHR], may not be brought again as a plenary action in another court." *Jiles v. Rochester Genesee Reg'l Transp. Auth.*, 317 F. Supp. 3d 695, 700 (W.D.N.Y. 2018) (quoting *York v. Ass'n of the N.Y.C. Bar*, 286 F.3d 122, 127 (2d Cir. 2002)).

The individual defendants argue that this Court lacks jurisdiction over Czachorowski's fourth cause of action for "Aiding & Abetting in Violation of New York State Human Rights Law," *see* Docket Item 25-1 ¶¶ 167-78, because that claim is "barred by NY[S]HRL's election of remedies provision," Docket Item 29-1 at 14. In particular, the individual defendants argue that Czachorowski's complaint with the DHR, *see* Docket Item 25-1 ¶ 134, and the subsequent finding that there was "no probable cause" for discrimination, *see id.* at 73-74, preclude her state law claims in this action, Docket item 29-1 at 14-15.

Czachorowski responds that her "election of an administrative remedy . . . does not bar [her] maintenance of . . . federal employment discrimination claims pursuant to [T]itle VII" or her NYSHRL retaliation claim. *See* Docket Item 31 at 9-10. And in their reply, the defendants concede that Czachorowski's election of remedies does not bar those claims. *See* Docket Item 32 at 5. But Czachorowski appears to conflate her federal Title VII discrimination and her retaliation claims with her NYSHRL claims. *Id.* at 9-10.

Whether the election of remedies bars a claim turns on "whether a sufficient identity of issue exists between the complaint before [DHR] and the instant claim." *James v. City of New York*, 2003 WL 21991591, at *5 (S.D.N.Y. Aug. 18, 2003) (quoting *Spoon v. American Agriculturalist, Inc.*, 103 A.D.2d 929, 478 N.Y.S.2d 174, 175 (3d

Dep't 1984)).  In other words, "[t]he election of remedies doctrine prevents pursuit in court of any claims arising from the same set of facts upon which the [p]laintiff sought relief in the administrative forum." *Id.*  And as a court in this District has previously held, a plaintiff "may not circumvent h[er] selection of the [DHR] as the forum for h[er] complaints by presenting additional facts or defendants in this proceeding." *Hamilton v. Niagara Frontier Transp. Auth.*, 2007 WL 2241794, at *11 (W.D.N.Y. Jul. 31, 2007).

Czachorowski argues that her "aiding and abetting claims" against the individual defendants "do not arise out of the same incidents or 'operative events'" as the failure to accommodate claim upon which her DHR claim was based.  Docket Item 31 at 10.  But Czachorowski's fourth cause of action explicitly alleges that the individual defendants, as employees of NYSIF, had the "authority to make decisions about . . . granting reasonable accommodations" but chose to disregard "their obligation to provide reasonable accommodations to employees."  Docket Item 25-1 ¶¶ 168-178.  So like the complaint Czachorowski made to DHR, the complaint here alleges a failure to accommodate; but unlike the complaint Czachorowski made to the DHR, the complaint here seeks relief from the individual employees of NYSIF instead of from NYSIF itself. *See id.*

Czachorowski's attempt to "circumvent h[er] selection of the [DHR] as the forum for h[er] complaints" by reframing her claim as one against the individual defendants is not enough to overcome the election of remedies doctrine.  *See Hamilton*, 2007 WL 2241794, at *11.  Because the complaint here raises a claim that was already presented to—and decided by—the DHR, Czachorowski's fourth cause of action for "aiding and abetting" in violation of the NYSHRL is dismissed.  *See* N.Y. Exec. Law § 297(9).

10

## II.   FEDERAL CLAIMS

### A.   Title VII Claims Against the State of New York

Title VII prohibits discriminatory practices by an "employer."  42 U.S.C. § 2000e-2(a).  "Consequently, the existence of an employer-employee relationship is a primary element of Title VII claims."  *Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 370 (2d Cir. 2006).

The State of New York argues that all three Title VII claims against it must be dismissed because it is not Czachorowski's employer.  Docket Item 29-1 at 11-13.  But in the context of Title VII, there are two "recognized doctrines that enable an employee in certain circumstances to assert employer liability against an entity that is not formally his or her employer": the single employer doctrine and the joint employer doctrine.  *Shiflett v. Scores Holding Co.*, 601 F. App'x 28, 30 (2d Cir. 2015) (summary order) (quoting *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 197 (2d Cir. 2005)).  And Czachorowski says that New York is her employer as either a single or joint employer.  Docket Item 31 at 5.

"A 'single employer' situation exists 'where two nominally separate entities are actually part of a single integrated enterprise.'"  *Arculeo*, 425 F.3d at 198.  The single employer doctrine "has been confined to two corporate contexts" in the Second Circuit: "where the plaintiff is an employee of a wholly-owned corporate subsidiary" and "where the plaintiff's employment is subcontracted by one employer to another, formally distinct, entity."  *See Gulino*, 460 F.3d at 378.  As the defendants point out, courts are hesitant to "extend the 'single employer' doctrine outside . . . its well-defined limits, especially where, as here, a government entity is involved."  *Popat v. Levy*, 328 F. Supp. 3d 106, 119 (W.D.N.Y. 2018); Docket Item 32 at 4 n.1.  That is because

11

"[e]xtending this theory to cases involving the complex relations between levels of government would be impracticable and would implicate . . . constitutional concerns." *Gulino*, 460 F.3d at 378.  This Court agrees and therefore finds that the State of New York is not Czachorowski's employer under the single employer doctrine.

"Under the joint employer doctrine, an entity other than an employee's formal employer can be held liable not because it is part of a 'single integrated enterprise,' but rather because the two entities 'handle certain aspects of their employer-employee relationship jointly.'"  *Shiflett*, 601 F. App'x at 30 (quoting *Arculeo*, 425 F.3d at 198). "This means that an entity other than the employee's formal employer has power to pay an employee's salary, hire, fire, or otherwise control the employee's daily employment activities, such that [a court] may properly conclude that a constructive employer-employee relationship exists."  *Felder v. United States Tennis Ass'n*, 27 F.4th 834, 844 (2d Cir. 2022).  More specifically, in determining whether an entity is a joint employer, courts will consider common law agency factors, including:

> [T]he hiring party's right to control the manner and means by which the product is accomplished; the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Gulino*, 460 F.3d at 371 (alterations omitted) (quoting *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 751-52 (1989)).  "Because the exercise of control is the guiding indicator, factors indicating a joint-employment relationship may vary depending on the case, and any relevant factor may be considered so long as it is drawn from the

12

common law of agency" factors in *Reid*.  *Felder*, 27 F.4th at 844 (internal quotations and alterations omitted).

"At the motion to dismiss stage, [Czachorowski]'s burden . . . is not great.  It must only be plausible and not merely speculative, that the [State of New York], as [Czachorowski]'s alleged joint employer, would have exerted significant control over the terms and conditions of h[er] employment."  *See id.* at 845.

New York argues that Czachorowski's "allegations are not sufficient to establish that the State was [her] joint employer."  Docket Item 29-1 at 12.  It asserts that NYSIF supervised Czachorowski and "controlled where [Czachorowski] worked"; "what days [she] was permitted to work remotely"; "whether [she] had to be vaccinated[ or ]tested to work in the office"; "whether to grant [Czachorowski] a religious accommodation"; and "whether to discipline [her] for failing to comply with NYSIF policies."  *See* Docket Item 29-1 at 13.

But those facts are not grist for the mill on a motion to dismiss based on the sufficiency of the pleadings.  And Czachorowski says that there are several factors supporting the conclusion that New York is her joint employer: "[t]he State of New York is listed in Box c of all W-2 forms issued to" NYSIF employees; New York "is the named employer on all paystubs issued" to NYSIF employees; "[t]he contract that governs the terms and conditions of [Czachorowski's employment] was negotiated and entered into [between] the New York Public Employees Federation, AFL-CIO[,] and . . . the State of New York"; and Czachorowski's "employment is governed by the provisions of the New York State Civil Service Law."  Docket Item 25-1 ¶¶ 20-22, 25.  She also says that an "interrelation of operations, centralized control of labor relations, common management,

13

and financial control" between New York and NYSIF indicates a joint employer relationship. Docket Item 31 at 6; *see also* Docket Item 25-1 ¶¶ 15-19. In addition, she says, NYSIF was subject to the New York Governor's Office of Employee Relations policies throughout the COVID-19 pandemic, which established telecommuting and return-to-work practices for all New York State employees. Docket Item 25-1 ¶¶ 45-47.

At the very least, those dueling scenarios create an issue of fact precluding dismissal. In other words, Czachorowski has plausibly alleged that the State of New York played a part in the terms and conditions of her employment sufficient to make it her joint employer. Whether Czachorowski "may ultimately be []able to establish that [New York] was, in fact, h[er] joint employer that should be held liable" is an issue for another day.[4] *See Popat*, 328 F. Supp. 3d at 121; *see also St. Jean v. Orient-Express Hotels, Inc.*, 963 F. Supp. 2d 301, 308 (S.D.N.Y. 2013) ("whether the [two defendants] were [the p]laintiff's joint employers is a question of fact"). Because Czachorowski has sufficiently alleged that New York is her joint employer, the Title VII claims against the state survive its motion to dismiss.

### B.    Retaliation Claim

To establish a prima facie case of retaliation under Title VII, "a plaintiff must demonstrate that '(1) she engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action.'" *Kelly v.*

---

[4] Indeed, two cases New York uses to support its argument were decided on a motion for summary judgment, not a motion to dismiss. *See Palmer v. N.Y. State Office of Court Admin.*, 2010 WL 3724115, at *4 n.2 (N.D.N.Y. Sept. 15, 2010); *Easterling v. Connecticut*, 783 F. Supp. 2d 323, 334 (D. Conn. 2011).

14

*Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (quoting *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012)).

NYSIF and New York State do not dispute the first three elements; instead, they argue that Czachorowski "fails to allege that there was a causal connection between the protected activity and the adverse action."  Docket Item 29-1 at 16.  More specifically, they say that it was Czachorowski's "fail[ure] to comply with NYSIF's COVID-19 and telecommuting policies"—not her request for a religious accommodation—that resulted in her termination.  *Id.*

But in response, Czachorowski asserts that it was her choice to "seek[] a religious accommodation, and oppose[] a flawed and retaliatory practice" that caused her suspension.  *See* Docket Item 31 at 15.  And she argues that the temporal proximity between the protected activities and her suspension sufficiently establishes causation at this stage.  *Id.* at 14.

Again, Czachorowski is correct.  Again, questions of fact preclude dismissal. Again, she has plausibly and adequately pleaded a claim well enough to survive a motion to dismiss.

"The protected activity must be the but-for cause of the alleged adverse action by the employer"; therefore, "the plaintiff must plausibly allege that the adverse action would not have occurred in the absence of the retaliatory motive."  *Weems v. New York*, 2024 WL 4150397, at *8 (W.D.N.Y. Sept. 10, 2024) (internal quotations omitted); *see also Briggs v. SCO Fam. of Servs.*, 2023 WL 3589896, at *2 (2d Cir. May 23, 2023) ("To overcome a motion to dismiss, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action, not merely that retaliation was a

15

substantial or motivating factor in the employer's decision." (internal quotation marks

omitted)).  But "[t]emporal proximity can certainly provide indirect evidence of causation"

between a protected activity and alleged retaliation.  *See Febrianti v. Starwood*

*Worldwide*, 2016 WL 502027, at *5 (S.D.N.Y. Feb. 8, 2016).  "[D]istrict courts in this

Circuit have generally found that a passage of two months between the protected

activity and the adverse employment action seems to be the dividing line" when

analyzing whether temporal proximity permits an inference of causation.  *Martin v. State*

*Univ. of N.Y.*, 704 F. Supp. 2d 202, 230 (E.D.N.Y. 2010) (internal quotation marks

omitted) (collecting cases).

Czachorowski points to four separate protected activities that caused her

suspension from NYSIF: (1) her opposition to NYSIF's "flawed reasonable

accommodation process" in June 2021; (2) her "[s]peaking out" against that process on

September 10, 2021; (3) her "[r]equest[ for a religious] accommodation" on September

30, 2021; and (4) her "complaint[s] with [the Division of Human Rights and] EEOC on

November 19, 2021."  Docket Item 31 at 14; *see also* Docket Item 25-1 ¶¶ 123-34.

Czachorowski was suspended about a month later on December 23, 2021.  Docket Item

25-1 ¶ 140.[5]

---

[5] When "timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."  *Briggs*, 2023 WL 3589896, at *2 (quoting *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001)).  But "gradual adverse job actions" were not taken against Czachorowski before she engaged in the protected activities.  Docket Item 25-1 ¶ 50.  On the contrary, accepting her allegations as true as the Court must at this stage, she had "always received positive satisfactory performance evaluations and ha[d] never been disciplined" before the COVID-19 pandemic.  *Id.*

Czachorowski therefore has pleaded temporal proximity between her protected activities and her suspension from NYSIF which is sufficient to give rise to an inference of causation.  *See id.* ¶¶ 124-39.  And because both sides otherwise dispute the motive behind the suspension, Czachorowski's Title VII retaliation claim survives the motion to dismiss.

### C.    First Amendment and Equal Protection Claims

The individual defendants argue that both the fifth cause of action for the violation of Czachorowski's right to free speech and the sixth cause of action for violation of [Czachorowski]'s right to equal protection must be dismissed against them because Czachorowski has not alleged their personal involvement.  Docket Item 29-1 at 10, 19-20.

"Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985)).  "To state a valid claim under [section] 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."  *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997).

"A prerequisite to a claim for damages under [s]ection 1983 . . . is a defendant's 'personal involvement' in the alleged constitutional violation."  *Carwell v. City of New York*, 2023 WL 419182, at *5 (S.D.N.Y. Jan. 26, 2023) (quoting *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001)).  To show such involvement, "the plaintiff must directly plead and prove that 'each [g]overnment-official defendant, through the

official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 612 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). "Being in the chain of command is not sufficient to satisfy personal involvement as the 'violation must be established against the supervisory official directly.'" *Belyea v. City of Glen Cove*, 2022 WL 3586559, at *21 (E.D.N.Y. Aug. 22, 2022) (quoting *Tangreti*, 983 F.3d at 618).

Czachorowski says that the individual defendants "acted with the deliberate purpose of denying [her] right to [f]ree[ s]peech under the First and Fourteenth Amendments" and "den[ied] her right to redress her complaints under clearly established law." Docket Item 25-1 ¶ 181. She also says that they "retaliated against [her] because she exercised her right to speak on matters of public concern" and that they "engag[ed] in a systematic and prolonged campaign to intimidate and harass her, in order to punish her for her complaints and to prevent her from filing further complaints." *Id.* ¶¶ 184-85. And with respect to her equal protection claim, Czachorowski says that the individual defendants "deprived [her] of a federal right to be free from religious discrimination" and "violated the Equal Protection Clause . . . by engaging in intentional religion-based discrimination, disparate treatment, and retaliation." *Id.* ¶ 191.

But Czachorowski says nothing about what each of the individual defendants actually did—that is, how each individual was personally involved in the alleged constitutional violations. At best, she suggests that the individual defendants collectively knew about the constitutional violations and "condoned, approved, provided substantial assistance[, ]and[] encouraged" them. *Id.* ¶ 143. Stated another way, the second amended complaint does not plead specific facts showing how any individual

18

defendant through his or her "own individual actions" was involved in a violation of Czachorowski's rights. *See Tangreti*, 983 F.3d at 612.

In fact, the second amended complaint includes almost nothing about any action taken personally by any individual defendant. *See* Docket Item 25-1. And the vague and conclusory allegations that it does make are insufficient to allege how any of the individual defendants had any personal involvement in the alleged constitutional violations. Czachorowski's fifth and sixth causes of action against the individual defendants therefore are dismissed.

In light of Czachorowski's pro se status, however, the Court grants her leave to amend her fifth and sixth causes of action. In any subsequent complaint, Czachorowski must detail the personal involvement of each individual defendant in the violation of her First Amendment and Equal Protection rights.

## **CONCLUSION**

For the reasons stated above, this Court GRANTS IN PART and DENIES IN PART the defendants' motion to dismiss, Docket Item 29.

More specifically, the motion is DENIED with respect to claims against the State of New York and with respect to the third cause of action. The motion is GRANTED as it relates to the fourth, fifth, and sixth causes of action. And Czachorowski's motion to expedite and refer to a magistrate, Docket Item 40, is DENIED as moot.

The Clerk of the Court shall terminate individual defendants Joseph Mullen, Gaurav Vasisht, Mary Beth Woods, and Patricia Carroll as defendants in this action. Czachorowski has 30 days from the date of this decision and order to amend her

19

complaint against any of the individual defendants that had personal involvement in the violation of her rights.

SO ORDERED.

Dated:   March 31, 2026
         Buffalo, New York


                                        /s/ Lawrence J. Vilardo
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE